**NOT FOR PUBLICATION**

```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY

                                  :
SCOTT C. CORNISH,                 :   CIVIL ACTION NO. 08-6395 (MLC)
                                  :
     Plaintiff,                   :   MEMORANDUM OPINION
                                  :
     v.                           :
                                  :
MORRIS COMMUNICATIONS             :
COMPANY, LLC,                     :
                                  :
     Defendant.                   :
_____:
```

**COOPER, District Judge**

The plaintiff, Scott C. Cornish, brought this action against the defendant, Morris Communications Company, LLC, asserting claims for breach of contract, breach of the duty of good faith and fair dealing, and tortious interference with prospective economic advantage.  (Dkt. entry no. 9, Am. Compl. at 4-5.)  The defendant now moves, inter alia, to dismiss the Amended Complaint based on lack of personal jurisdiction.  (Dkt. entry no. 10, Mot. to Dismiss.)[1]  The Court determines the motion on the briefs without an oral hearing, pursuant to Federal Rule of Civil

---

[1] The defendant, in the alternative, requests a transfer for want of jurisdiction pursuant to 28 U.S.C. § ("Section") 1631.  (Dkt. entry no. 16, Def. Reply Br. at 5.)  Under Section 1631, the Court must find want of jurisdiction before transferring the civil action.  For the reasons discussed infra, the Court does not find a want of jurisdiction.  The defendant, moreover, does not request a transfer of venue under Sections 1404 or 1406.  The Court will not raise the issue of transfer sua sponte.

Procedure ("Rule") 78(b).  For the reasons stated herein, the Court will deny the motion.

## BACKGROUND

The plaintiff is a New Jersey citizen who provides consulting services to the printing industry.  (Am. Compl. ¶ 1.)  The defendant is a limited liability company with its headquarters located in Georgia.  (Dkt. entry no. 10, House Aff. ¶ 2.)  The defendant is deemed to be a citizen of Georgia.  (Am. Compl. ¶ 2.)

The defendant's Chief Information Officer, Steven B. Strout ("Strout"), initially contacted the plaintiff through electronic mail on November 22, 2006 ("11-22-06 E-Mail"), regarding an article published by the plaintiff on a quality improvement program known as the "Six Sigma."  (Dkt. entry no. 10, Buckley Aff. ¶ 3; see id., Ex. A.)  The plaintiff responded to the 11-22-06 E-Mail upon receipt, and subsequently responded again on November 28, 2006, to inquire about employment opportunities with the defendant.  (See id., Exs. B, C.)  Strout responded the same day, stating, inter alia, that the defendant did not "have a production director position open at the moment," but noted he was "always looking for great people" and asked if the plaintiff would be interested in a different role.  (Id., Ex. D.)  Later that day, Strout suggested the plaintiff and the defendant enter into a consulting agreement (the "Agreement").  (Id., Ex. E.)

2

The plaintiff traveled to the defendant's offices in Georgia to discuss the Agreement. (Id. ¶ 5; see id., Ex. F.) The plaintiff subsequently mailed the defendant, electronically and through the United States Postal Service, a draft proposal for the plaintiff to provide consulting services to the defendant for a Print Quality Improvement Program (the "project") over a period of 26 weeks from January through August of 2007. (Id., Ex. G; see id, Ex. I.) Following one change to the billing rate, agreed upon by the plaintiff "given the length of the commitment and professionalism of [the defendant's] organization," the plaintiff and the defendant both signed the Agreement. (See id., Exs. H, I.)

The plaintiff alleges that the majority of his development and assessment labor was to be performed at his New Jersey home office, and the Agreement states that storage of materials for the project would be in his home office. (Am. Compl. ¶ 7; Buckley Aff., Ex. I.) The plaintiff asserts, upon execution of the Agreement, he performed the required evaluation and assessment services. (Am. Compl. ¶ 10.) Although Strout alerted him of a delay in the project's implementation, the plaintiff contends he "was induced [by the defendant] to reject and/or defer from pursuing other consulting engagements during the period between March and August 2007," as the project would require his full time commitment, and was ultimately paid for

"only" 39 days of work.  (Id. ¶¶ 11-14.)  The plaintiff alleges the defendant terminated the Agreement in September 2007.  (Id. ¶ 15.)  The plaintiff commenced this action on December 31, 2008.  (See dkt. entry no. 1, Compl.)  The defendant now moves, inter alia, to dismiss the Amended Complaint.  (Mot. to Dismiss.)

## DISCUSSION

### I.   Personal Jurisdiction

Rule 4(e) allows a district court to assert personal jurisdiction over a non-resident defendant to the extent permitted by the law of the state where the district court sits.  See Fed.R.Civ.P. 4(e).  New Jersey's long-arm statute, N.J.Ct.R. 4:4-4, permits a court to exercise personal jurisdiction over a non-resident defendant to the furthest extent allowed by the United States Constitution.  Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 96 (3d Cir. 2004); see Avdel Corp. v. Mecure, 277 A.2d 207, 209 (N.J. 1971) (noting that New Jersey's long-arm statute allows out-of-state service "to the uttermost limits permitted by the United States Constitution").  The Fourteenth Amendment Due Process Clause, however, prohibits the exercise of personal jurisdiction "over a nonresident defendant who does not have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  Provident Nat'l Bank v. Cal.

Fed. Sav. & Loan Ass'n, 819 F.2d 434, 437 (3d Cir. 1987) (internal quotations omitted; alteration in original).

A defendant's purposeful conduct and connection with the forum state must be such that the defendant "should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958). The purposeful availment requirement ensures that a defendant will not be required to litigate in a forum solely as a result of "random," "fortuitous," or "attenuated" contacts, or the unilateral activity of another person. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985); see also Hanson, 357 U.S. at 253.

Once a defendant raises lack of personal jurisdiction as a defense, the plaintiff must demonstrate that the defendant has sufficient contacts with the forum to justify the exercise of jurisdiction. N. Penn Gas Co. v. Corning Natural Gas Corp., 897 F.2d 687, 689 (3d Cir. 1990); Provident Nat'l Bank, 819 F.2d at 437. A plaintiff may meet this burden by establishing that the court has either "general" or "specific" jurisdiction. Provident Nat'l Bank, 819 F.2d at 437. A plaintiff need only make a prima

5

facie demonstration of jurisdiction by showing with sufficient particularity the presence of contacts between the defendant and the forum. See, e.g., Mellon Bank (E.) PSFS, Nat'l Ass'n v. Farino, 960 F.2d 1217, 1223 (3d Cir. 1992). A court, in examining whether the plaintiff has satisfied this prima facie burden, must resolve all disputes of material fact in favor of the plaintiff. See, e.g., Miller Yacht Sales, Inc., 384 F.3d at 97.

General jurisdiction exists when the defendant has continuous contacts with the forum state that are unrelated to the events forming the basis of the cause of action. See Provident Nat'l Bank, 819 F.2d at 437; Machulsky v. Hall, 210 F.Supp.2d 531, 538 (D.N.J. 2002). To establish general jurisdiction, a plaintiff must show significantly more than mere minimum contacts with the forum state. Provident Nat'l Bank, 819 F.2d at 437; Decker v. Circus Circus Hotel, 49 F.Supp.2d 743, 747 (D.N.J. 1999). A plaintiff bears the "rigorous" burden of demonstrating that the defendant has "continuous and systematic" contacts with the forum state such that the defendant should expect to be haled into court on any cause of action. Helicopteros Nacionales de Colom., S.A. v. Hall, 466 U.S. 408, 414-16, 415 n.9 (1984); Provident Nat'l Bank, 819 F.2d at 437. The facts required to establish general jurisdiction must be "extensive and persuasive." Reliance Steel Prods. Co. v. Watson,

Ess, Marshall & Enggas, 675 F.2d 587, 589 (3d Cir. 1982); Decker, 49 F.Supp.2d at 747.  The plaintiff does not claim that New Jersey has general personal jurisdiction over the defendant. (Dkt. entry no. 15, Pl. Br. at 2.)

Specific jurisdiction over a defendant exists when the defendant has purposefully directed activities at residents of the forum and the claim directly relates to or arises out of those activities.  Burger King Corp., 471 U.S. at 472; Miller Yacht Sales, Inc., 384 F.3d at 96.  The activities must "rise to the level of minimum contacts with the state, such that the defendant should reasonably anticipate being haled into court there."  Exton v. Our Farm, Inc., 943 F.Supp. 432, 438 (D.N.J. 1996).  The critical factor is whether defendant "purposely avail[ed] itself of the privilege of conducting activities with the forum State."  Machulsky, 210 F.Supp.2d at 538.  Jurisdiction is proper where the contacts proximately result from the defendant's own actions, which create a substantial connection with the forum.  Burger King Corp., 471 U.S. at 475.  Although a defendant's entrance into the forum state enhances the defendant's affiliation with that forum, physical entrance into the forum is not required.  Id. at 476.

If a court determines that the defendant has purposefully established minimum contacts with the forum state, then the court must decide whether the exercise of personal jurisdiction

comports with "fair play and substantial justice."  Id.  In addressing this question, a court may consider "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies."  Miller Yacht Sales, Inc., 384 F.3d at 97 (quotation and citation omitted).  Only rarely will the fairness requirement defeat jurisdiction where a defendant has purposefully engaged in forum activities.  Decker, 49 F.Supp.2d at 746.  Specific jurisdiction is "properly tied to the particular claims asserted."  Gen. Elec. Co. v. Deutz AG, 270 F.3d 144, 150 (3d Cir. 2001); see also Remick v. Manfredy, 238 F.3d 248, 255-56 (3d Cir. 2001).  Accordingly, the Court will address specific personal jurisdiction over the plaintiff's contract and tort claims separately.

**II.  Personal Jurisdiction in Contract Cases**

    **A.  Legal Standards**

When considering a contract claim, the court "inquire[s] whether the defendant's contacts with the forum were instrumental in either the formation of the contract or its breach."  Gen. Elec. Co., 270 F.3d at 150 (citation omitted).  Defendants who "reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to

regulation." Burger King Corp., 471 U.S. at 473 (internal quotation and citation omitted). When a defendant receives "the benefits and protections of the forum's laws by engaging in business activities with a forum resident, the courts have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there." Remick, 238 F.3d at 257 (internal quotations and citation omitted). If minimum contacts are established, the court then assesses whether assertion of specific personal jurisdiction "comports with fair play and substantial justice." On-Time Staffing, LLC v. Flexible Staffing Solutions, Inc., No. 06-3951, 2007 WL 1234978, at *5 (D.N.J. Apr. 25, 2007) (quotation and citation omitted). For this fairness inquiry, the defendant has the burden to "present a compelling case" that assertion of jurisdiction in the forum state is "unreasonable." Id. (quotation and citation omitted).

In deciding whether personal jurisdiction is present in a contract claim, the court considers "the totality of the circumstances, including the location and character of the contract negotiations, the terms of the contract, and the parties' actual course of dealing." Remick, 238 F.3d at 256 (citation omitted). Personal jurisdiction is properly found when the contract is "of a long term, ongoing nature, rather than a one-time occurrence or single transaction." On-Time Staffing, LLC, 2007 WL 1234978, at *4 (citation omitted).

9

In the commercial setting, "communication by electronic facilities, rather than physical presence, is the rule. Where these types of long-term relationships have been established, actual territorial presence becomes less determinative." Gen. Elec. Co., 270 F.3d at 150-51 (citation omitted). While "informational communications in furtherance of a contract" do not automatically establish minimum contacts in the forum state, personal jurisdiction could be properly found when "the defendant solicited the contract or initiated the business relationship leading up to the contract . . . [or] sent any payments to the plaintiff in the forum state." Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prods. Co., 75 F.3d 147, 152 (3d Cir. 1996) (quotation and citation omitted); see Remick, 238 F.3d at 256 (discussing examples distinguished in Vetrotex Certainteed Corp.); On-Time Staffing, LLC, 2007 WL 1234978, at *3 (same).

When deciding whether the defendant's actions constitute minimum contacts, "[e]ach case must be judged on its particular facts." Farino, 960 F.2d at 1224 (citation omitted). In Farino, the Court found the defendant's direct dealing with the plaintiff and supplying of financial information constituted minimum contacts. Id. at 1226. In Remick, the defendant's actions in seeking out the plaintiff for an eventual agreement and sending of payments to the plaintiff's office in the forum state, as well as the plaintiff's performance of services in the

10

forum state, were found to constitute minimum contacts. 238 F. 3d at 256. In On-Time Staffing, LLC, the defendant initiated the negotiation with an e-mail to the plaintiff that included the plaintiff's postal address and this was considered a contact. 2007 WL 1234978, at *4.

**B.   Application of Legal Standards**

The defendant argues that it does not have enough minimum contacts with New Jersey to support a finding of specific personal jurisdiction. (See dkt. entry no. 10, Def. Br. at 4-5.) The defendant likens the contractual relationship here to a transaction involving the purchase of goods from the forum state. (Id. at 4.) The defendant cites Tocci v. Antioch Univ., No. 07-1341, 2007 U.S. Dist. Lexis 59706, at *9 (D.N.J. Aug. 15, 2007), to argue (1) it has not "purposely directed [its] activities" at New Jersey, and (2) the plaintiff's claim does not "arise out of or relate to" activities in New Jersey. (Def. Reply Br. at 4.) The plaintiff, to the contrary, argues that the defendant directed its activities at New Jersey when it "entered into a contractual arrangement that anticipated performance in New Jersey," and the defendant should therefore be subject to specific personal jurisdiction in New Jersey. (Pl. Br. at 7.)

Given the totality of the circumstances, the Court finds that the defendant reached out to a New Jersey citizen to form a contractual relationship, and, as such, established minimum

11

contacts with New Jersey.  The defendant purposefully directed its actions towards a New Jersey citizen for the purposes of obtaining information and consulting services.  (See Buckley Aff., Exs. A-I.)  The plaintiff's claims arise out of the contractual relationship resulting from these contacts.  (See Am. Compl.)  This case is distinguishable from a one-time exchange of goods as the agreement is a contract for consulting services over an extended period of time.  (See Buckley Aff., Ex. I.)  See On-Time Staffing, LLC, 2007 WL 1234978, at *4.

In a commercial transaction, electronic communications are more determinative than physical location.  See Gen. Elec. Co, 270 F.3d at 150-51.  The defendant here, as did the defendants Remick and On-Time Staffing, LLC, initiated the course of dealing when the defendant electronically contacted the plaintiff regarding the Six Sigma process.  (See Buckley Aff., Ex. A.)  Although the plaintiff inquired about employment opportunities, the defendant initiated the contractual negotiations by suggesting a consulting contract.  (Id., Exs. C, D, E.)

The nature of the contractual relationship between the plaintiff and the defendant was such that the defendant could have anticipated being haled into court in New Jersey.  The plaintiff asserts that "the heart of the work [was to] be performed from [the plaintiff's] offices in New Jersey."  (Pl. Br. at 7.)  The defendant here, like the defendant in On-Time

12

Staffing, LLC, knew the plaintiff was a New Jersey citizen; the plaintiff's address is on the Agreement, and the plaintiff billed for travel to and from New Jersey and Georgia.  (See Buckley Aff., Exs. I, J.)  The defendant sent payments to the plaintiff in New Jersey.  (Am. Compl. ¶ 14.)  The defendant, a sophisticated business entity, also made changes to the terms of the Agreement, yet failed to suggest a forum selection or choice of law clause.  (See Buckley Aff., Exs. H, I.)

The defendant, moreover, purposefully availed itself of the benefits of the laws of New Jersey by agreeing to allow materials and confidential information to be stored in the New Jersey home office.  The defendant here, as did the defendant in Farino, agreed to supply financial information to the plaintiff; the terms of the Agreement provide that the plaintiff will store materials for the project in his home office and return confidential documents when the project is completed.  (See id., Ex. I.)  The Court thus concludes that sufficient minimum contacts are present for the Court to assert specific personal jurisdiction over the defendant.

The defendant also argues that a finding of specific personal jurisdiction here would not comport with fair play and substantial justice.  (Def. Reply Br. at 4-5.)  The burden of proof for this element of specific jurisdiction is on the defendant.  See On-Time Staffing, LLC, 2007 WL 1234978, at *5.

13

The defendant cites case law explaining the fair play and substantial justice requirement, but fails to show compelling considerations that would preclude a finding of specific personal jurisdiction in New Jersey over the defendant. (Def. Br. at 4; see Def. Br.; Def. Reply Br.) The Court therefore finds that exercise of personal jurisdiction in New Jersey over the defendant does not offend traditional notions of fair play and substantial justice, and concludes that specific personal jurisdiction over the plaintiff's contract claim is properly asserted in New Jersey.

**III. Personal Jurisdiction in Tort Cases**

    **A.    Legal Standards**

The standard for personal jurisdiction in intentional tort cases is the "effects test," which derives from the Supreme Court decision in Calder v. Jones, 465 U.S. 783 (1984). Lawn Doctor, Inc. v. Branon, No. 07-04735, 2008 WL 2064477, at *4 (D.N.J. May 14, 2008). Calder recognized that, in certain cases, "the plaintiff's residence in the forum may, because of defendant's relationship with the plaintiff, enhance defendant's contacts with the forum." IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 265 (3d Cir. 1998) (internal quotation and citation omitted). The "effects test" is used to determine "personal jurisdiction over nonresident defendants who allegedly committed an intentional tort outside the forum." Remick, 238 F.3d at 258.

14

There are three prongs to the "effects test" to determine personal jurisdiction in intentional business tort cases. See IMO Indus., Inc., 155 F.3d at 261-66. The plaintiff must show (1) the defendant's act was an intentional tort, (2) the brunt of the harm was felt by the plaintiff in the forum state "such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort," and (3) the defendant's tortious conduct was "expressly aimed" at the forum state "such that the forum can be said to be the focal point of the tortious activity." Id. at 265-66.

Tortious interference is an intentional tort for the purposes of personal jurisdiction analysis. Remick, 238 F.3d at 260. The plaintiff claims the defendant tortiously interfered with a prospective economic advantage between the plaintiff and his prospective customers. (Am. Compl. ¶ 24.) The first prong is therefore met and the discussion will focus on the second prong and third prong of the "effects test."

The second prong of the "effects test" focuses on where the plaintiff felt the brunt of the harm. In Remick, the plaintiff conducted his business in his office located in the forum state, and the Court held that "the effects of any intentional conduct by the defendants designed to interfere with [the plaintiff's] contractual relations . . . necessarily would have been felt in [the forum state]." 238 F.3d at 260. In Lawn Doctor, Inc., the

15

Court found the second prong was met because the plaintiff was headquartered in New Jersey and "conducted consultation and advice services" in New Jersey for the defendant. 2008 WL 2064477, at *5.

The third prong of this test requires the "defendant knew that the plaintiff would suffer the brunt of the harm caused by the tortious conduct in the forum." IMO Indus., Inc., 155 F.3d at 266. The purpose of the third prong is to ensure that the non-resident defendant "sufficiently directed [the] tortious conduct at the state," but does not rise to the level of a proximate cause inquiry. Miller Yacht Sales, Inc., 384 F.3d at 98-9. The tortious conduct must be aimed at the plaintiff specifically and not another party. See IMO Indus., Inc., 155 F.3d at 267. In Remick, the Court found the defendant's allegedly tortious conduct was not aimed at another party and met the third prong of the "effects test" because it was expressly aimed at the plaintiff "in Pennsylvania where he lives and works." 238 F.3d at 260. In Lawn Doctor, Inc., the Court found the defendant's conduct was expressly aimed at the plaintiff because the defendant's conduct included multiple phone calls to the plaintiff in New Jersey. 2008 WL 2064477, at *6.

 **B. Application of Legal Standards**

The defendant does not address personal jurisdiction under the "effects test." (See Def. Br.; Def. Reply Br.) The Court,

16

however, holds that the plaintiff alleges sufficient facts under the "effects test" for the Court to assert specific personal jurisdiction over the defendant for the tort claim.

The brunt of the harm that resulted from the defendant's alleged conduct was felt by the plaintiff in New Jersey.  The plaintiff here, as did the plaintiff in Remick, lives and works out of a home office in the forum state.  The plaintiff here, as did the plaintiff in Lawn Doctor, Inc., conducted consulting services for the defendant out of his office in New Jersey.  The defendant could have anticipated that its encouragement of the plaintiff to reject other consulting opportunities would result in an economic loss for the plaintiff, and that the loss would be felt at both his home and place of business in New Jersey.

The defendant's conduct was expressly aimed at the plaintiff in New Jersey.  The defendant here, as did the defendant in Remick, aimed its conduct specifically at the plaintiff in his home office in New Jersey; no other parties were involved.  The defendant here, as did the defendant in Lawn Doctor, Inc., made representations to the plaintiff directly that are the basis of the allegedly tortious conduct.  Plaintiff alleges that defendant's inducements to defer other consulting engagements directly prevented the plaintiff from seeking business opportunities.  These inducements were thus expressly aimed at the plaintiff in New Jersey.  The Court therefore finds that

specific personal jurisdiction is properly asserted over the defendant for the plaintiff's tort claim.

## CONCLUSION

The Court, for the reasons stated <u>supra</u>, will deny the motion, <u>inter alia</u>, to dismiss for lack of personal jurisdiction. The Court will issue an appropriate Order.

                                            s/ Mary L. Cooper
                                            **MARY L. COOPER**
                                            United States District Judge

Dated:    July 16, 2009